UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ARTHUR JOSEPH ROUSE,

                Plaintiff,                Case No. 1:16-cv-1358

v.                                   Honorable Gordon J. Quist

MICHAEL MATTEUCCI et al.,

                Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's claims against Defendants Bensley and Washington will be dismissed for failure to state a claim. Plaintiff's claims against Defendant Matteucci will be dismissed because they are barred by the doctrine of *Heck v. Humphrey,* 512 U.S. 477 (1994). Plaintiff's requests for preliminary injunctive relief relating to the Grand Traverse County jail, for release on bond, and for the appointment of counsel are denied.

## Factual Allegations

Plaintiff Arthur Joseph Rouse is incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility in Jackson, Michigan. Plaintiff is serving a sentence of 5 to 7½ years following his conditional plea of guilty, in Grand Traverse County Circuit Court, to a charge of maintaining a house for purposes of prostitution in violation of MICH. COMP. LAWS § 750.452. Plaintiff was sentenced as a prior felony offender, MICH. COMP. LAWS § 769.10. Plaintiff's status as a prior felony offender served to enhance his sentence under the Michigan Sentencing Guidelines; nonetheless, the trial court still departed upward when it imposed Plaintiff's minimum 5 year sentence.

Plaintiff's "house of prostitution" was his auto-repair business:

> [Plaintiff] invited persons to stay at his autorepair business which served as [his] residence and business. He allowed several young men to reside at his business/residence and to pay their rent and other expenses in exchange for sexual favors [for Plaintiff]. Two women also came to the residence on isolated incidents and were paid for sex by [Plaintiff]. It is undisputed that none of the individuals were prostitutes prior to them coming to the business/residence, and that they did not initially come to the business for the purposes of prostitution; further, it is undisputed that none of the individuals traded sex for money with anyone other than [Plaintiff], and that none of the individual engaged in prostitution outside of servicing [Plaintiff]-nor did they continue with prostitution after leaving [Plaintiff].

(Def./Appellant's Delayed Appl. For Leave to Appeal, ECF Nos. 1-1, 1-2, PageID.161.)

Between May and November 2015, the prosecutor struggled to find the right crime(s) with which to charge Plaintiff. An understanding of the progression of charges filed against Plaintiff is helpful to an understanding of his claims. Plaintiff was initially charged with three counts of misdemeanor soliciting and accosting for purposes of prostitution.[1] (Compl. Misdemeanor, ECF No. 1, PageID.38, 39.) The charges related to three males who had provided sexual favors to

---

[1]MICH. COMP. LAWS § 750.448 provides: "A person 16 years of age or older who accosts, solicits, or invites another person in a public place or in or from a building or vehicle, by word, gesture, or any other means, to commit prostitution or to do any other lewd or immoral act, is guilty of a crime punishable as provided in section 451."

Plaintiff in exchange for rent, expenses, or cash.  (*Id.*)  The prosecutor dismissed those charges in favor of two felony counts of pandering.[2]  (Compl. Felony, ECF No. 1, PageID.42, 43.)  Prior to October of 2014, however, that statute was limited to inducing a *female* to become a prostitute and the persons with respect to whom Plaintiff had been charged were male.  Apparently, because the enticement or procuring may have predated the October 2014 amendment, the prosecution could have been barred by the Ex Post Facto Clause.  Accordingly, they were dismissed.

The prosecutor then attempted to proceed on a charge of gross indecency between two men based on the same conduct, but established Supreme Court precedent precluded that approach.  Instead, the prosecutor identified two females who had provided sexual favors to Plaintiff in exchange for benefits, and charged Plaintiff with pandering with respect to those women.  The case was bound over to circuit court on those charges.  The prosecutor then added a charge for maintaining a house of prostitution.[3]  (Am. Felony Information, ECF No. 1, PageID.79, 80.)  The case went back to the district court for a preliminary examination.  The district court bound him over to the circuit court on the new charge.  Plaintiff entered a plea of guilty on the charge of maintaining a house of prostitution conditioned on his ability to challenge the bindover on appeal.  Any remaining charges were dismissed.

Plaintiff concedes that his conduct with respect to the individuals at his shop falls within the prohibition of misdemeanor soliciting and accosting.  He argues, however, that his

---

[2]MICH. COMP. LAWS § 750.455 provides: "A person who does any of the following is guilty of a felony punishable by imprisonment for not more than 20 years:

(a) Procures an inmate for a house of prostitution.
(b) Induces, persuades, encourages, inveigles, or entices a person to become a prostitute. . . ."

[3]MICH. COMP. LAWS § 750.452 provides: "A person who keeps, maintains, or operates, or aids and abets in keeping, maintaining, or operating, a house of ill-fame, bawdy house, or any house or place resorted to for the purpose of prostitution or lewdness is guilty of a felony punishable by imprisonment for not more than 5 years or by a fine of not more than $5,000.00, or both."

conduct does not fall within the felonies of pandering or maintaining a house of prostitution because those crimes require a third person. According to Plaintiff, pandering is something a pimp or madam might do, not something a prostitute's customer might do. Similarly, Plaintiff argues that one does not maintain a house of prostitution when one simply pays for prostitutes in one's own house. At least with respect to maintaining a house of prostitution, the state courts did not agree. The Michigan Court of Appeals denied leave because Plaintiff's position lacked merit. *People v. Rouse*, No. 333701 (Mich. Ct. App. Aug. 24, 2016). The Michigan Supreme Court also denied leave to appeal. *People v. Rouse*, __ N.W.2d __, 2016 WL 6436581 (Mich. 2016).

Plaintiff is suing Detective Michael Matteucci and Sheriff Tom Bensley of the Grand Traverse County Sheriff's Department and MDOC Director Heidi Washington.[4] Each Defendant is sued in his or her personal and official capacity. Plaintiff is suing Defendant Bensley because the Grand Traverse County jail[5] is overcrowded, does not have a departmental grievance procedure, does not have a law library, denies adequate medical and dental care, denies access to telephones, and denies access to personal hygiene items. Plaintiff also sues Defendant Bensley for failing to adequately train and supervise Defendant Matteucci "under the doctrine of supervisory liability." (Compl., ECF No. 1, PageID.18.)

Plaintiff sues Defendant Matteucci his role in the investigation and prosecution of Plaintiff. Plaintiff alleges that Defendant Matteucci signed "a search warrant affidavit to search the Plaintiff's automotive shop without probable cause that evidence of a crime would be seized." (*Id*.,

---

[4]Plaintiff also names John and Jane Doe(s) as plaintiffs and defendants. It appears Plaintiff included unnamed Plaintiffs who have suffered, as Plaintiff claims he suffered, the objectionable conditions of confinement in the Grand Traverse County Jail. Indeed, Plaintiff purports to bring such claims as the representative of a class. With regard to the unnamed Defendants, Plaintiff fails to make any specific allegations.

[5]Plaintiff resided in the Grand Traverse County jail for one night upon his initial arrest in May of 2015. It also appears, although Plaintiff does not expressly allege, that he may have stayed in the jail between the November 24, 2015 revocation of his release on bond and his transfer to the MDOC following his sentencing on January 5, 2016.

PageID.6.)  Defendant Matteucci "signed every one of the unconstitutional charges . . . ."  (*Id*., PageID.7.)  Plaintiff contends the charges of pandering violated the Ex Post Facto Clause;[6] the charges of gross indecency violated Supreme Court precedent, and the charge for maintaining a house of prostitution was nonsensical because it was Plaintiff's house and Plaintiff was the only customer.  (*Id*., PageID.13.)  Defendant Matteucci filed a false complaint against Plaintiff alleging that Plaintiff committed criminal sexual conduct with McClure.  (*Id*.)  Defendant Matteucci entrapped Plaintiff; conspired to manipulate the jury pool by delaying McClure's arrest; lied in the police report; and conspired to revoke and forfeit Plaintiff's bond[7] with the use of false information.

According to Plaintiff, Defendant Matteucci also withheld exculpatory evidence, obstructed justice by conspiring with witnesses, conspired to effect the forfeiture of Plaintiff's $10,000 bond with perjured testimony, and conspired with witnesses McClure and Thompson (two of Plaintiff's tenant prostitutes) to bring false charges.  (*Id*.)  Defendant Matteucci recorded Plaintiff secretly without Plaintiff's permission and tried to use the recording against Plaintiff.  (*Id*., PageID.10.)  Defendant Matteucci confiscated items that were not on the search warrant and never returned them.  (*Id*., PageID.11.)  Defendant Matteucci attempted to influence witnesses.  (*Id*., PageID.12.)  Defendant Matteucci told witnesses that they did not have to speak to Plaintiff's attorneys or private investigator.

Plaintiff names MDOC Director Heidi Washington as a Defendant, but makes no specific allegations against her.  With respect to the MDOC generally, however, Plaintiff alleges that he was blocked from using the prison law library at times, or at least denied "extra time."  (*Id*.,

---

[6]As the charge was stated in the Felony Complaint, it did not violate the Ex Post Facto Clause.  The date stated for the offense in the complaint signed by Defendant Matteucci was March 31, 2015, well after the statute was amended to permit its application to male prostitutes.  (Compl. Felony, ECF No. 1, PageID.42, 43.)

[7]Plaintiff's sister deposited $10,000 to secure Plaintiff's release on bond.  (Motion, ECF No. 1, PageID.62, ¶18; Appl. for Leave to Appeal, ECF No. 1-2, PageID.208.)

PageID.18.)  He was also denied the ability to make copies and sufficient time to conduct research.  (*Id*.)  Plaintiff alleges that the mailroom rejected a legal book sent to him by an MDOC approved vendor.  (*Id*.)  Plaintiff also contends he was retaliated against after he requested extra time in the library.  The retaliation took many forms, including misconduct reports, periodic shakedowns, loss of callouts to the law library, and verbal confrontations.  (*Id*.)

Plaintiff makes additional allegations with regard to his counsel, other county officials, and state appellate court personnel, but does not sue them as Defendants.  He purports to bring his claims on behalf of the entire class of persons who have been harmed by conditions at the Grand Traverse County Jail.  He specifically mentions wrongs committed against other persons who resided in Plaintiff's shop.

Plaintiff seeks different types of relief.  He seeks immediate and permanent injunctive relief to stop unconstitutional conditions of confinement in the Grand Traverse County Jail.  Plaintiff contends that because of the wrongs committed by Defendant Matteucci, Plaintiff is being illegally detained.  (*Id*., PageID.15.)  He seeks millions of dollars in compensatory and punitive damages for his improper detention.  He also requests release on bond pending this Court's review of his case and the return of the bond money that was forfeited.

## Discussion

I.   Request for class certification

Plaintiff purports to act on behalf of others with respect to the conditions at the Grand Traverse County jail.   He titles his complaint as a "Class Action Complaint" and he complains of particular practices (for example, mattress sharing) that it appears others have suffered while he has not.  The Court construes Plaintiff's allegations as a request for class certification.

For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000). Because Plaintiff is an incarcerated *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Therefore, the Court will deny Plaintiffs' request for class certification.

To the extent Plaintiff seeks to represent the interests of other prisoners in some other way, he is not permitted to do so. Plaintiff lacks standing to assert the constitutional rights of others. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

Moreover, as a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners (or his sister). *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). A party in federal court must proceed either through a licensed attorney or on his or her own behalf. 28 U.S.C. § 1654; *see also* FED. R. CIV. P. 11(a) ("Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney,

shall be signed by the party").  No pro se plaintiff may sign pleadings on behalf of another plaintiff. *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'").

For these reasons, any claims Plaintiff purports to bring for violations of the rights of any person other than himself are properly dismissed.

## II.    Request for preliminary injunctive relief

Plaintiff asks the Court to grant a preliminary injunction against the Grand Traverse County jail ordering them to stop "double matting" and to immediately provide access to online legal research.  The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Id.*  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.  *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009.  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir.

2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Here, Plaintiff cannot show that he will suffer any injury, much less irreparable injury, in the absence of preliminary injunctive relief because he is no longer at the Grand Traverse County jail. Accordingly, preliminary injunctive relief is inappropriate.

III.   Request for appointment of counsel

Plaintiff has requested a court-appointed attorney. Plaintiff is not proceeding *in forma pauperis* in this Court; but, even indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur- Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel is properly denied.

IV.   Request for release on bond

Plaintiff seeks release on bond pending resolution of his § 1983 prisoner civil rights case. He cites 42 U.S.C. § 2241, but it appears he intended to cite 28 U.S.C. § 2241, regarding the power to grant the writ of habeas corpus. In making this request, Plaintiff reveals the fundamental

flaw in most of the claims he attempts to raise here: the claims are properly raised in a habeas corpus petition, not a civil rights action for damages. *See* § V.A., below. Nonetheless, Plaintiff seeks a release on bond.

In *Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990), the Court of Appeals recognized that, in limited circumstances, a district court may grant bond pending a decision on the merits of *a habeas corpus petition*. The *Dotson* court indicated, however, that the power to release petitioner on bond must be exercised sparingly and only in the presence of exceptional circumstances. *Dotson*, 900 F.2d at 79; *see also Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993). Under *Dotson*, the prisoner seeking release on bond "must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of some 'circumstance making the [motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Dotson*, 900 F.2d at 79 (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)). The habeas petitioner, who is incarcerated under a presumptively valid criminal conviction, is on a much weaker footing than a pretrial accused or even a convicted defendant waiting appeal. *See Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir. 1978).

Applying the two-prong test in *Dotson*, this Court finds neither a substantial claim on the merits entitling him to release nor exceptional circumstances deserving special treatment in the interest of justice. Plaintiff's request for release on bond is properly denied.

V.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. <u>Claims that Plaintiff is unconstitutionally convicted and incarcerated</u>

Most of the claims that Plaintiff raises against Defendant Matteucci would have the effect of rendering Plaintiff's conviction invalid. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck*, 512 U.S. at 486-87, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted).  The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief.  *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages);  *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

Plaintiff's allegations clearly call into question the validity of his conviction.  He alleges that he is being illegally detained, he specifically mentions habeas corpus in his complaint, and he states the legal issues in his complaint warrant his release.  His claim for damages is stated on a "per month" and "per day of unlawfull [sic] imprisonment" basis.  (Compl., ECF No. 1, PageID.20.) Therefore, his action is barred under *Heck* until his criminal conviction has been invalidated.

## B.     False charges, testimony, and search warrant affidavits

It is possible that certain of Plaintiff's claims against Defendant Matteucci would not necessarily, if successful, invalidate his conviction.  By way of example, the invalidation of Plaintiff conviction would not necessarily follow from success on Plaintiff's claim regarding the improper search in violation of the Fourth Amendment or his claim that Detective Matteucci signed "false" charges (other than the charge on which he was convicted: maintaining a house of prostitution) in violation of his due process rights.  Such claims, therefore, could survive the *Heck* bar.  But even these claims are properly dismissed.

Plaintiff alleges that Defendant Matteucci signed "an affidavit for a search warrant without probable cause" in violation of the Fourth Amendment.  Plaintiff's allegation is factually

unsustainable.  Based on Plaintiff's submissions to this Court and his admissions, Defendant Matteucci had probable cause to believe that Plaintiff had committed the crime of soliciting and accosting with respect to at least three men and that the crime bore a significant relationship to Plaintiff's shop/residence.  Plaintiff acknowledges he committed that crime.

To the extent that Plaintiff's challenge to Defendant Matteucci's statement of probable cause or his claims that Defendant Matteucci signed false complaints is premised on his interpretation that pandering or maintaining a house of prostitution requires the involvement of an additional player, the issue has already been decided against him by the state courts.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Michigan courts "'have the final authority to interpret . . . that State's legislation.'" *Brown v. Ohio*, 432 U.S. 161, 167 (1977) (citing *Garner v. Louisiana*, 368 U.S. 157, 169 (1961)).  If the Michigan courts say that Plaintiff maintains a house of prostitution when he uses the services of a prostitute in his own house or that Plaintiff pandered when he enticed persons to engage in prostitution even if Plaintiff was the only customer, it is not the province of this Court to say otherwise.

If Plaintiff intended that some other "falseness" in Defendant Matteucci's statement made his statements actionable, he has failed to articulate any facts in support of that conclusory label.  Federal Rule of Civil Procedure 9(b) requires that must state with particularity the circumstances constituting fraud.  Plaintiff's allegations that affidavits, charges, or testimony were "false" are too vague and conclusory to state a claim.  *See Wing v. Tennessee*, No. 2:14-cv-02367-JDT-tmp, 2015 WL 1062122 *2-3 (W.D. Tenn. Apr. 9, 2015) (holding that averment that "[prisoner's] indictment was fraudulent" failed to satisfy requirement of Fed. R. Civ. P. 9(b)); *Arnold v. Hunt*, No. 1:15cv141, 2015 WL 1537883 *6 (S.D. Ohio Apr. 6, 2015) (holding prisoner's

allegations that information was "false" were insufficient); *Daniel v. Edgerton*, No. 08-CV-13997, 2009 WL 2392789 *4 (E.D. Mich. Aug. 3, 2009) (prisoner's failure to identify the false statements rendered his allegations insufficient).  Plaintiff's claims based on Defendant Matteucci's alleged misconduct, if they are not otherwise barred by *Heck*, are properly dismissed for failure to state a claim.

### C.    Supervisory claims against Defendant Bensley

Plaintiff claims that Defendant Bensley is liable for the misconduct of Defendant Matteucci because he is Matteucci's supervisor.  A plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability.  *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).  Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998)).  Accordingly, Plaintiff's supervisory claims against Defendant Bensley are properly dismissed

D.      Claims against Defendant Bensley for county jail conditions

Plaintiff raises several claims with respect to the conditions of confinement at the

Grand Traverse County jail.  The only conditions that Plaintiff alleges affected him personally were

as follows:

> Plaintiff was held in the Grand Traverse County Jail by Defendant Sheriff Bensley
> in a very small room with approximately 15 "other" prisoners sleeping on the floor
> without adequate bed linen and matresses [sic] for those prisoners for two (2) days
> without hygiene, medication, showers, law library, nor access to the departmental
> grievance procedure.

(Compl., ECF No. 1, PageID.6 ¶ 3.)  Plaintiff also indicates he filed "multiple requests for the use

of a law library, but was informed by jail staff that the Grand Traverse County Jail did not have a

law library anymore, it was done away with."  (*Id.*, PageID.10 ¶ 7.)  Additionally, Plaintiff states

he repeatedly requested access to a departmental grievance procedure, but he was denied.  (*Id.*,

PageID.15 ¶ 8.)  With respect to the remainder of his county jail allegations, Plaintiff's allegations

relate to the conditions suffered by "prisoners," "they," or "others."  (*Id.*, PageID.4; 10 ¶ 6; 14 ¶¶

2, 3; 15 ¶¶ 4, 5, 6; 18 ¶ 4.)  As set forth above, however, Plaintiff may not assert the claims of others.

1.      Conditions of pretrial detention

Pretrial detainees held in jail are protected under the Due Process Clause of the

Fourteenth Amendment, which provides that "a detainee may not be punished prior to an

adjudication of guilt in accordance with due process of law."  *Bell v. Wolfish*, 441 U.S. 520, 535

(1979).  The Eighth Amendment protections against cruel and unusual punishment are considered

to be coterminous under the Fourteenth Amendment Due Process Clause.  *See, e.g., Estate of Carter

v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005); *Watkins v. City of Battle Creek*, 273 F.3d 682,

685-86 (6th Cir. 2001); *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir. 1995); *Barber

v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th

Cir. 1985)). Thus, the Court is guided by Eighth Amendment principles in considering Plaintiff's claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations

are required to make out a conditions-of-confinement claim." *Id.*  Plaintiff's allegations do not rise to the level of extreme deprivation that violates his constitutional rights.

In *Rhodes*, 452 U.S. at 337, the Supreme Court held that prison overcrowding, standing alone, does not violate the Eighth Amendment.  Rather, Plaintiff bears the burden of showing that crowded conditions led to independent deprivations of essential food, medical care, sanitation, or other necessities.  452 U.S. at 348.  Plaintiff's bare allegations of overcrowding fail to meet this standard.

Moreover, Plaintiff's overnight stay in a holding cell amounts to nothing more than a temporary inconvenience.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal citation omitted).  *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

2.   First Amendment access to the courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817.  The Court further noted that in addition to law libraries or

alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

A prisoner who is represented by counsel has no freestanding right to access a jail law library. "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"*Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). An inmate's right of access to the courts is fully protected if he is represented by counsel. *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983). *Cf. United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (defendant's waiver of right to court-appointed counsel and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library). Plaintiff was represented by counsel in his criminal case at the time he was detained in the Grand Traverse County jail. His right of access to the courts was therefore adequately protected.

### 3.    Grievance procedure

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422,

1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).   Moreover,

Defendants' actions have not barred Plaintiff from seeking a remedy for his "grievances."   *See Cruz*

*v. Beto*, 405 U.S. 319, 321 (1972).   Indeed, Plaintiff's ability to seek redress is underscored by his

pro se invocation of the judicial process.[8]   *See Azeez v. DeRobertis*, 568 F. Supp.  8, 10 (N.D. Ill.

1982).   Plaintiff's allegation that the jail does not provide a departmental grievance remedy fails to

state a cognizable claim.

### E.      Claims against Defendant Washington

Other than identifying MDOC Director Washington as a Defendant, Plaintiff makes

no allegations against her.   Plaintiff contends that MDOC personnel have interfered with his access

to the courts, but he does not allege that Defendant Washington has done so.   A plaintiff bringing

an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or

vicarious liability.   *Everson*, 556 F.3d at 495; *Street*, 102 F.3d at 818(citing *Monell*, 436 U.S. at

658).   Liability under § 1983 must be based on active unconstitutional behavior and cannot be based

upon "a mere failure to act."   *Shehee*, 199 F.3d at 300 (quoting *Salehpour*, 159 F.3d at 206).

Because Plaintiff has alleged no active unconstitutional behavior by Defendant Washington, he has

failed to state a claim against her.

### F.      Claim for return of the bond deposit

Plaintiff seeks the return of the forfeited $10,000 cash bond.   He repeatedly

represents, however, that the money belonged to his sister.   As set forth in Sec. I above, Plaintiff

---

[8]Plaintiff's right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were denied access to a grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850,  1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

lacks standing to assert the constitutional rights of others.  *Newsom*, 888 F.2d at 381; *Raines*, 1992 WL 188120, at *2; *see also Warth*, 422 U.S. at 498 (a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  December 21, 2016                              /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE